STANLEY ZYCH, Plaintiff-Appellee, *v.* J. EDWARD JONES, Defendant-Appellant.

First District (4th Division)  No. 79-638

Opinion filed May 15, 1980.

J. Edward Jones, of Blue Island, for appellant.

Medard M. Narko, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

A default judgment was entered in a prior action against the present plaintiff Stanley Zych. Zych then sued J. Edward Jones, the attorney who

had filed his appearance in the first action alleging that he had been damaged by Jones' alleged legal malpractice. The trial court entered a partial summary judgment for the plaintiff on the issue of liability and sent the question of damages to the jury which returned a verdict for the plaintiff for $17,000. We reverse and remand holding that there was a question of fact whether the defendant had ever been retained by the plaintiff, that the plaintiff failed to prove that the judgment would not have been entered but for the defendant's negligence, that the damages recovered were, for the most part, for a different period than that alleged in the complaint and that the plaintiff's evidence at the first trial was not sufficient to support a finding that these latter damages were caused in any way by the default judgment.

The plaintiff, Stanley Zych, on July 25, 1975, filed a verified complaint alleging that the defendant, J. Edward Jones, an attorney, undertook his (plaintiff's) defense in case 71 M1-11636 (hereinafter referred to as the automobile case); that defendant after filing his appearance in the automobile case failed to appear when the case was called on March 27, 1974, resulting in the entry of a default judgment against plaintiff; that as a result, plaintiff's driver's license was, unknown to him, suspended pending satisfaction of the judgment; that plaintiff discovered this when he tried to renew his license; that plaintiff immediately put the defendant on notice and requested the problem be resolved, and that as a result of the defendant's neglect, the plaintiff suffered the following damages:

> (a) he was unable to work from March 19, 1975, to April 15, 1975, and was not recompensed for the loss of income;
> (b) after repeated attempts to secure action by defendant, he was forced to secure his personal counsel to investigate the problems;
> (c) he suffered physical and emotional damages.

The plaintiff sought damages in the amount of $33,200 plus attorney's fees and costs.

In his answer, the defendant admitted that he filed the plaintiff's appearance as a favor to him and at the request of his employer George F. Mueller & Sons, Inc. (the corporation) "without compensation and without appreciation." He also admitted that he did not appear at the trial date. He contended it was plaintiff's duty to watch the case and be present. He denied that plaintiff ever notified him of the suspension; he did deliver a check in payment of the default judgment on Mueller's instruction.

Plaintiff thereafter served defendant with a request to admit the authenticity of the order of suspension and a request to admit that defendant filed an appearance for plaintiff in the automobile case but

failed to appear on March 27, 1974, as a result of which a default judgment was entered against plaintiff on that date and that no action was taken to vacate the default.

After the defendant failed to respond to these requests, the plaintiff moved for summary judgment on the issue of liability, contending that defendant admitted that he did not appear at the trial although he had filed an appearance and that a default judgment was entered and the plaintiff's driver's license was suspended. Plaintiff contended that there was no question of fact as to liability. Plaintiff filed no affidavits with the motion.

The defendant filed two affidavits in opposition. In the first George Mueller, one of the two owners and active managers of the corporation, swore that plaintiff suddenly stopped working for the corporation on March 21, 1975, that he, affiant, called plaintiff after about two weeks to find out why he had not come to work but plaintiff cursed and hung up without giving any reason. Mueller further stated under oath that the corporation had work for plaintiff and wanted him to work but he would not return to his job; that if plaintiff had returned, affiant would have taken steps to secure his license for him or would have given him other tasks pending its reacquisition. Affiant instructed defendant to pay the judgment rendered against the corporation and plaintiff and it was paid on March 26, 1975, with money furnished by the corporation. Finally, affiant swore that defendant filed the appearance on affiant's instruction so that no judgment would be taken until plaintiff decided whom he wanted to represent him.

The defendant in his own affidavit swore that Mueller asked defendant to file plaintiff's appearance since he had to file the corporation's; that plaintiff at that time stated he would let affiant know if he desired him to be his attorney and if he did, make arrangements as to fees; that plaintiff never notified defendant he wanted him to represent him nor paid him any fee nor made any arrangement therefor. Defendant further stated that the plaintiff had no defense to the automobile case. He also stated that plaintiff never notified him that his license had been suspended, and that the corporation had been ready, willing and able at all times to pay the judgment and would have done so if affiant had requested it, which he would have done if he had notice of the suspension of plaintiff's license.

The trial court granted plaintiff's motion for summary judgment as to liability and a jury trial was held on the issue of damages.

At trial plaintiff testified that on March 19, 1975, after he discovered his driver's license was revoked, he was informed by his employer "No license, no work," that his license was not restored until April 15, 1975, that he was not compensated by his employer from March 19, 1975, until April 15, 1975, losing four weeks of salary at $250 per week; that he

remained unemployed from May 29, 1975, until July 24, 1976, during which time he received unemployment compensation and after that was employed by another company at a lesser salary. He also testified that no one from his place of employment talked to him for three months, at which time his employer called him but made no job offer.

The defendant attempted on cross-examination to ask questions as to the collision for which judgment was rendered. The plaintiff objected on the grounds of irrelevancy and the objection was sustained.

The defendant did not testify on his own behalf but produced several witnesses. The first, Jo Ann Prather, a manager of the corporation, testified that plaintiff refused to use a driver until his license was restored. Mueller likewise testified that he would have furnished a driver to take plaintiff on his rounds until his license was restored but that the plaintiff refused the offer and walked out on him. He further testified that after the judgment was paid, he called plaintiff and asked him to come back but plaintiff refused and swore at him. Leland Smith, a sales manager for the corporation, testified he heard Mueller tell plaintiff on the telephone he would provide a driver until his license was "OK."

In closing argument plaintiff asked for $1,000 damages for the lost salary from March 19 to April 15, 1975, and, over ·objection of the defendant, for $27,600 for the reduced salary from August 1976 to December 6, 1978, the date of the trial.

The jury returned a verdict for plaintiff in the amount of $17,000.

## I.

It is well established in Illinois that a motion for summary judgment should only be granted if the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. (*Molloy v. Santucci Construction Co.* (1979), 78 Ill. App. 3d 249, 397 N.E.2d 125; *Tripp v. Hale* (1979), 74 Ill. App. 3d 200, 392 N.E.2d 748; *Libby-Broadway Drive-In, Inc. v. McDonald's System, Inc.* (1979), 72 Ill. App. 3d 806, 391 N.E.2d 1.) The right of the party to summary judgment must be clear and free from doubt. (*Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197; *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 392 N.E.2d 203; *Cantu v. Utility Dynamics Corp.* (1979), 70 Ill. App. 3d 260, 387 N.E.2d 990.) The trial court erred in entering the partial summary judgment since the defendant's affidavits clearly showed the existence of a genuine issue of material fact and the plaintiff's right to recover was not clear and free from doubt.

■■ In order to recover from the defendant, the plaintiff was required to establish that the defendant owed a duty to the plaintiff and breached that duty. (*Mick v. Kroger Co.* (1967), 37 Ill. 2d 148, 224 N.E.2d 859.) The

defendant conceded that he failed to appear when the case was called on March 27, 1974; however, he denied that he had any duty to appear. In his motion for summary judgment plaintiff relied solely on defendant's admission that he had filed an appearance for plaintiff and on his own allegation in the complaint that defendant had undertaken the defense. Defendant's affidavits, however, clearly contradicted this allegation, stating that the appearance was filed at Mueller's request, not plaintiff's; that plaintiff informed defendant he would let him know if he wanted him to represent him in the case and never did so, and that plaintiff made no arrangement as to fees.

The relationship of attorney and client is a contractual relationship. It is only created by a retainer or an offer to retain or a fee paid. (*DeWolf v. Strader* (1861), 26 Ill. 225; 7 Am. Jur. 2d *Attorneys at Law* §91 (1963).) The contract of retainer may be made like any other contract; it may be express or implied; it may be oral or written. (*Cooper & Moss v. Hamilton* (1869), 52 Ill. 119; *Leslie v. Fischer* (1871), 62 Ill. 118; *Johnston v. Brown* (1893), 51 Ill. App. 549.) It cannot be created by the attorney alone or by an attorney and a third party who has no authority to act. (*Greer v. Ludwick* (1968), 100 Ill. App. 2d 27, 241 N.E.2d 4; *Hannah v. Hannah* (1968), 94 Ill. App. 2d 372, 236 N.E.2d 783; 4 Ill. L. & Prac. *Attorneys and Counselors* §91 (1971).) Accordingly, while where an attorney appears of record for a party, it is presumed the appearance is authorized by the party in question, this presumption is not conclusive but may be rebutted by evidence to the contrary. *Gray v. First National Bank* (1944), 388 Ill. 124, 57 N.E.2d 363; *Agorianitis v. Ress* (1977), 55 Ill. App. 3d 325, 371 N.E.2d 10.

■■ ■ The evidence presented in the defendant's affidavits, would, if believed, rebut the presumption created by the filing of the appearance and establish that no contract of retainer creating an attorney-client relationship ever existed between plaintiff and defendant and thus, not only did defendant not owe plaintiff a duty to appear in court for him on March 27, 1974, but that he could not lawfully and ethically do so. The plaintiff, according to the defendant's evidence, never arranged for defendant's services. To the contrary, according to defendant's affidavit, although plaintiff explicitly informed defendant he would let him know if he wished his services he neither did so nor made any arrangements for a fee. The fact that Mueller asked defendant to represent plaintiff temporarily was under the circumstances insufficient since the attorney-client relationship does not admit of intermediaries between the attorney and the client (*Greer v. Ludwick* (1968), 100 Ill. App. 2d 27, 241 N.E.2d 4), and Mueller apparently was not acting as plaintiff's agent. Likewise, since an attorney has no right to appear as attorney for another without the latter's authority (*Hannah v. Hannah* (1968), 94 Ill. App. 2d 372, 236

N.E.2d 783), the defendant's unauthorized act of entering an appearance did not create a duty to continue to appear as an attorney for the plaintiff although unauthorized.

In addition, while the issue was not raised by the defendant, we are forced to note that plaintiff failed to allege freedom from contributory negligence although such was an essential element of his case. For this reason also his right to recover was not clear and free from doubt.

## II.

We further hold that even if an attorney-client relationship were established, the jury verdict could not be upheld both because the plaintiff failed to prove his case and because the damages awarded at trial were, for the most part, not sought in the complaint.

■■ When an attorney breaches his duty to his client, the attorney is liable for any loss which ensues from that act. Damages, however, will not be presumed and the client bears the burden of proving that damages resulted. (*Trustees of Schools of Township 42 North v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431, *appeal denied* (1972), 49 Ill. 2d 579.) In the instant case the plaintiff alleged that defendant was negligent in allowing the default judgment to be entered. He did not claim that the defendant concealed the existence of the default judgment from him or that in some other way the defendant prevented the payment of the judgment before March 26, 1975. Since the plaintiff is only contending that his damages resulted from the entry of the default judgment and not from some other negligent act of the defendant, he had the burden of establishing that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question. (*Kohler v. Woollen, Brown & Hawkins* (1973), 15 Ill. App. 3d 455, 304 N.E.2d 677; *Trustees of Schools v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431, *appeal denied* (1972), 49 Ill. 2d 579; *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, 194 N.E.2d 489.) Plaintiff failed to produce evidence tending to show he had a defense to the automobile case.

Furthermore, while plaintiff's testimony at trial, if believed, tended to establish that his inability to work from March 19 to April 15, 1975, was caused by the entry of the judgment and the resulting suspension of his license, there was no evidence as to why plaintiff was unemployed after May 29, 1975. Absent such evidence, it could not be assumed that this unemployment and the later employment at a lower salary was caused by the entry of the judgment and the temporary suspension of his license. Moreover, damages for this latter period of time were not sought in the complaint, which was never amended.

■■ We disagree, however, with the defendant's contention that the

plaintiff could not seek to recover damages incurred after the filing of the complaint, assuming, of course, that the complaint had been properly amended to seek such damages. Where a particular wrongful act produces both immediate and future injury, all damages resulting before and after commencement of the action may be recovered. *Fruehauf Trailer Co. v. Lydick* (1944), 325 Ill. App. 28, 59 N.E.2d 551, *appeal denied* (1945), 388 Ill. 626.

For the foregoing reasons the judgment of the trial court is reversed and remanded for further proceedings.

Reversed and remanded for further proceedings.

LINN, P. J., and JIGANTI, J., concur.